UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

NOV 12 2008

MOLLY C. DWYER, CLERK OF COURT
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff - Appellee,<br><br>　v.<br><br>JOHN MCTIERNAN,<br><br>　　　　Defendant - Appellant. | No. 07-50430<br>D.C. No. CR-06-00259-DSF-01<br>Central District of California, Los Angeles<br><br>**MANDATE** |

The judgment of this Court, entered 10/21/2008, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

　　　　　　　　　　　　　　　FOR THE COURT:

　　　　　　　　　　　　　　　Molly C. Dwyer
　　　　　　　　　　　　　　　Clerk of Court

　　　　　　　　　　　　　　　By: Theresa Benitez
　　　　　　　　　　　　　　　Deputy Clerk

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br>v.<br>JOHN MCTIERNAN,<br>*Defendant-Appellant.* | No. 07-50430<br>D.C. No.<br>CR-06-00259-DSF-<br>01<br>OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
August 4, 2008—Pasadena, California

Filed October 21, 2008

Before: Stephen Reinhardt, Roger J. Miner,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Miner

---

*The Honorable Roger J. Miner, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

14655

## COUNSEL

Charles M. Sevilla, Law Office of Charles Sevilla, San Diego, California, for the defendant-appellant.

S. Todd Neal, Sullivan, Hill, Lewin, Rez & Engel, San Diego, California, for the defendant-appellant.

Christine C. Ewell, Robert E. Dugdale, Assistant United States Attorneys (Thomas P. O'Brien, United States Attorney for the Central District of California), Los Angeles, California, for the plaintiff-appellee.

## OPINION

MINER, *Circuit Judge*:

Defendant-appellant John McTiernan ("Defendant" or "McTiernan") appeals from a judgment of conviction and sentence entered in the United States District Court for the Central District of California following a guilty plea to a single-count information charging him with making a false statement to an FBI agent in violation of 18 U.S.C. § 1001. Prior to sentencing, McTiernan moved to withdraw his guilty plea, claiming that he had not been informed of his right to seek suppression, pursuant to 18 U.S.C. §§ 2511 and 2515, of an incriminating recording seized by the government.

In an order entered September 25, 2007, the district court denied McTiernan's motion to withdraw his guilty plea, finding that McTiernan simply changed his mind once he learned that the government intended to seek a custodial sentence. The district court then sentenced McTiernan to a four-month term of imprisonment, a two-year period of supervised release, a fine of $100,000, and a special assessment of $100.

On appeal, McTiernan claims that he should have been allowed to withdraw his guilty plea because he was not informed by his previous counsel at or before the time of his guilty plea that he could move to suppress the incriminating recording seized by the government and allegedly used to persuade McTiernan to plead guilty. McTiernan claims that such a motion would have been successful. He also contends that the district court clearly erred by determining that his effort to withdraw his guilty plea was based on an improper motive. For the reasons that follow, we vacate the judgment of the district court and remand the case so that the court may conduct a full evidentiary hearing as to whether there is a fair and just reason for McTiernan to withdraw his plea.

## BACKGROUND

On February 13, 2006, McTiernan was interviewed by telephone by Special Agent Stanley Ornellas of the Federal Bureau of Investigation ("FBI") in connection with an investigation into former private investigator Anthony Pellicano's use of illegal wiretapping. Ornellas asked whether McTiernan had knowledge of Pellicano's wiretapping activities and had previously discussed wiretapping with Pellicano. In response, McTiernan stated that he had never discussed wiretapping with Pellicano, that Pellicano had never mentioned his ability to wiretap telephone calls, and that he had used Pellicano's services only once, in connection with his divorce.

The responses made to Special Agent Ornellas' inquiries were false. McTiernan later admitted that he had hired Pellicano in or around August 2000 and paid him at least $50,000 to conduct an illegal wiretap of two individuals, one of whom was Charles Roven, the producer of a movie that McTiernan was then directing. Pellicano installed the wiretaps, listened to the subjects' business and personal telephone calls, and reported their contents to McTiernan.

Several weeks after Ornellas interviewed McTiernan, the government contacted McTiernan and suggested that he retain

UNITED STATES v. MCTIERNAN     14661

an attorney. On March 4, 2006, McTiernan retained the services of John Carlton, Esq. On March 16, 2006, McTiernan met with Carlton and the government regarding McTiernan's statements to Special Agent Ornellas. At that meeting, the government revealed its evidence of discussions between McTiernan and Pellicano regarding the wiretapping. The evidence included a digital recording that Pellicano had made of a telephone conversation between himself and McTiernan (the "Recording"). The Recording, which was made on August 17, 2000, was recovered by the FBI from Pellicano's computer pursuant to a search warrant in the related investigation and prosecution of Pellicano, who was charged with over one-hundred Racketeer Influenced and Corrupt Organizations (RICO) Act violations, bribery of police officers, and wiretapping. In the Recording, Pellicano informed McTiernan, who at that time was directing a movie in Canada, that he had intercepted "tons of stuff" and that he could not "even listen to all of them." McTiernan instructed Pellicano to focus on instances where the producer was "saying one thing to the studio and saying something else to others," and said that catching the producer "bad mouthing" the "studio guys" would "really be useful."

On March 24, 2006, McTiernan entered into a written plea and cooperation agreement with the government, in which he agreed to plead guilty to a forthcoming information charging him with making a false statement in violation of 18 U.S.C. § 1001(a)(2). The plea agreement set forth, *inter alia*, the elements of the offense, the statutory maximum sentence, the constitutional rights that McTiernan would be giving up, the stipulated Sentencing Guideline factors, and the factual basis for the plea. McTiernan signed the agreement and the following declaration, attesting that his attorney had advised him of possible defenses and that he was satisfied with his legal representation:

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the

14662      UNITED STATES v. MCTIERNAN

terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

On April 3, 2006, the government filed a single-count information against McTiernan, charging him with making a false statement to an FBI agent in violation of 18 U.S.C. § 1001.

On April 17, 2006, pursuant to the written plea agreement with the government, McTiernan re-executed the written waiver of his right to be indicted by a grand jury on the charge and pleaded guilty to the charged offense. Also on April 17, 2006, the district court conducted McTiernan's Rule 11 hearing. During the hearing, McTiernan's attorney, in response to the court's inquiries, stated: that he had discussed the contents of the plea agreement with McTiernan before McTiernan signed it; that he had reviewed the facts of the case with McTiernan; that he had pursued potential defenses with McTiernan; and that he had advised McTiernan concerning the legality or admissibility of any statements or confessions or other evidence the government had against McTiernan. McTiernan's attorney further stated his belief that McTiernan was entering his plea freely and voluntarily and with full knowledge of the charge and the consequences of the plea.

The court also questioned McTiernan about his attorney's representation and read aloud the stipulated factual basis from McTiernan's plea agreement. McTiernan confirmed that he and his attorney had discussed his case candidly and that his

attorney had considered and advised McTiernan as to the existence of any possible defenses. McTiernan also confirmed that he understood the consequences of his plea and that he was competent to make the plea. He then allocuted to the facts, admitting that he knowingly made false statements to the FBI agent.

After making a full inquiry in compliance with Rule 11, the district court found at the conclusion of the hearing that McTiernan was fully competent and capable of entering an informed plea; that he was aware of the nature of the charges and the consequences of the plea; that the plea of guilty was knowingly, voluntarily, and intelligently made with a full understanding of the nature of the charge, the consequences of the plea, and McTiernan's constitutional rights; and that the plea was supported by an independent factual basis containing each of the essential elements of the offense. The court then accepted the plea and ordered that it be entered.

After requesting and obtaining a continuance of his sentencing date, McTiernan sought, in May 2007, another continuance of his sentencing date. On this occasion, the government informed McTiernan that it would not agree to further continuances of his sentencing date because it was dissatisfied with his failure to provide truthful cooperation to the government in connection with his offense.

On June 28, 2007, eleven days before McTiernan was scheduled to be sentenced, S. Todd Neal, Esq. ("Neal"), advised the government that he would be substituted for Carlton as McTiernan's new counsel and that he needed additional time to prepare for sentencing. Neal informed government counsel that he did not intend to seek to withdraw McTiernan's plea. In light of that representation, the government agreed to continue McTiernan's sentencing, and a new sentencing date was set for September 10, 2007.

After the government agreed to this continuance, it advised Neal that McTiernan had lied during his proffer interviews

and that if McTiernan continued to lie, the government would seek a custodial sentence in his case. The government repeated this concern during an August 14, 2007, meeting with Neal's associate.

On August 22, 2007, after the government had notified defense counsel that it would not move for a downward departure based on cooperation and would seek a custodial sentence for McTiernan, McTiernan's counsel informed the government for the first time of McTiernan's plan to file a motion to withdraw his guilty plea and thereafter to suppress the Recording.

On August 28, 2007, the government filed a sentencing position paper advocating for the imposition of a six-month term of imprisonment, the maximum sentence the government could seek under the terms of the plea agreement it entered with McTiernan.

McTiernan then moved to withdraw his guilty plea. The motion came approximately seventeen months after the plea but only two months after Neal was retained. McTiernan claimed that he was entitled to withdraw his plea because his former counsel had provided ineffective assistance. Specifically, McTiernan claimed that his former counsel (1) failed to obtain any discovery materials from the government prior to the time McTiernan entered his pre-indictment plea; and (2) failed to advise him that he could have sought to suppress the Recording on the ground that the Recording was made by Pellicano without McTiernan's knowledge and consent and for an allegedly "criminal or tortious purpose," in violation of Title III and 18 U.S.C. § 2515. In support of the motion, McTiernan submitted a declaration of his former counsel, Carlton. Regarding suppression, Carlton's declaration was limited to a statement that he "did not see any basis for suppressing the [Recording] under the wiretap statute, and [that he] could not predict that any such basis would be discovered if [McTiernan] decided to reject the government's offer and

UNITED STATES v. MCTIERNAN        14665

proceed with the case." In what he claimed was further support for his motion, McTiernan referred to another criminal case involving Pellicano's illegal wiretap scheme. In that case, defendant moved, albeit unsuccessfully, to suppress tape recordings that Pellicano made of their telephone conversations.

On September 24, 2007, the district court held a hearing on McTiernan's motion to withdraw his guilty plea. The court denied the motion, immediately proceeded to sentencing, and sentenced McTiernan to a term of imprisonment of four months, to be followed by a two-year period of supervised release. The district court further ordered that McTiernan pay a $100,000 fine and a $100 special assessment.

The following day, on September 25, 2007, the district court issued a written order providing its reasons for the denial of McTiernan's motion to withdraw his guilty plea. In its order, the court noted that the grounds raised by McTiernan in support of his motion were "many, varied, and mutable" but that each had the common thread that none of them provided a proper ground, supported by reliable evidence, to allow McTiernan to withdraw his guilty plea.

First, the district court rejected McTiernan's "evolving laundry list of complaints about his former counsel," finding that McTiernan's former counsel provided neither erroneous advice nor ineffective assistance in representing McTiernan. The court ruled that McTiernan's claims concerning his former counsel's performance were either immaterial or — in the case of his allegation that his former counsel failed to discuss the charge or available defenses to it with McTiernan prior to the guilty plea — contradicted by other evidence. The court further found that McTiernan's claims concerning his former counsel's performance were dishonest, noting:

> McTiernan is clearly willing to lie whenever it suits his purpose, whether or not he has been advised

14666         UNITED STATES v. MCTIERNAN

> of the ramifications of doing so. He has several times admitted that he lied to the FBI agent, and he is either lying to this Court now or he lied when signing the plea agreement and entering his plea in open court [concerning what he had and had not been told by his former counsel].

(footnote omitted).

The court also rejected McTiernan's claim that he should be allowed to withdraw his guilty plea so that he would be able to bring a motion to suppress the Recording in which they discussed Pellicano's plan to wiretap an individual illegally on McTiernan's behalf. The district court also found that Carlton had discussed a possible suppression motion prior to McTiernan's guilty plea and that such a motion, if brought, would not be meritorious:

> McTiernan argues that his desire to obtain sufficient evidence to entitle him to a hearing on a motion to suppress the recording of his conversation with Pellicano constitutes a "fair and just reason" to permit withdrawal of his guilty plea. But this Court has already made clear that much of the alleged support for this proposed motion doesn't even come close to entitling another vigorously represented defendant to an evidentiary hearing — much less suggesting that [McTiernan] might ultimately prevail. If anything, that Pellicano never used the [R]ecording to blackmail McTiernan detracts from Christiansen's — and McTiernan's — request for suppression.
>
> The Court does not agree that speculation concerning a criminal or tortious purpose for Pellicano's recordings is a "fair and just reason" for permitting withdrawal of the plea. McTiernan does not suggest he has new evidence, and Title III was certainly the law at the time of McTiernan's plea. *Cf. Ortega-*

UNITED STATES v. MCTIERNAN     14667

> *Ascanio*, 376 F.3d at 885-86 (plea may be withdrawn where post-plea change in law would cause dismissal of indictment). Therefore, his only hope is again to claim ineffective assistance of counsel. However, McTiernan's former counsel has testified by declaration that he advised McTiernan on the topic of possible suppression of the recording — concluding that he did not see any basis for suppressing the recording and could not predict that any basis would be discovered if McTiernan chose to go to trial. For the reasons described above, the Court accepts Carlton's declaration testimony and rejects McTiernan's.

(footnotes omitted).

The court determined that in light of the chronology of events in the case and the court's finding "that McTiernan's alleged other reasons for seeking withdrawal lack credibility, the most reasonable conclusion is that McTiernan seeks to withdraw his plea because the government has asked for a custodial sentence." (footnote omitted). As the court correctly found, "[t]his is unquestionably *not* valid grounds to grant permission to withdraw a plea."

The judgment of the district court was entered September 29, 2007, and McTiernan filed his timely notice of appeal on October 2, 2007. McTiernan is currently free on bail pending the result of this appeal.

## DISCUSSION

A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Ruiz*, 257 F.3d 1030, 1033 (9th Cir. 2001) (en banc); *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995). However, findings of fact supporting the district court's exercise of its discretion are reviewed for clear error. *See United States v.*

*Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003). The defendant bears the burden of establishing that withdrawal is warranted. FED. R. CRIM. P. 11(d)(2)(B); *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005).

[1] Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to the imposition of sentence if he "can show a fair and just reason for requesting the withdrawal." While the defendant is not permitted to withdraw his guilty plea "simply on a lark," *United States v. Hyde*, 520 U.S. 670, 676-77 (1997), the "fair and just" standard is generous and must be applied liberally. "Prior to sentencing, the proper inquiry is whether the defendant has shown a fair and just reason for withdrawing his plea even if the plea is otherwise valid." *Davis*, 428 F.3d at 806.

Although procedural errors and intervening circumstances are commonly raised as grounds for withdrawal, each case must be reviewed in the context in which the motion arose to determine whether, ultimately, a "fair and just" reason exists. In this regard, the Advisory Committee on Criminal Rules has adopted guidelines developed in the case law:

> Although the terms "fair and just" lack any pretense of scientific exactness, guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, as is the reason why the defenses were not put forward at the time of original pleading. The amount of time which has passed between the plea and the motion must also be taken into account.

FED. R. CRIM. P. 32 advisory committee's note (1983) (citations and internal quotation marks omitted).

[2] In this Circuit, "[f]air and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered

evidence, intervening circumstances, *or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.*" *Davis*, 428 F.3d at 805 (internal quotation marks omitted). Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made presentence. *Id.* at 806. Where a defendant shows "that his counsel's gross mischaracterization [of a possible sentence] plausibly *could* have motivated his decision to plead guilty[,] [n]othing in Rule 11(d)(2)(B) requires a defendant to show more in order to satisfy the 'fair and just reason' standard." *Id.* at 808.

[3] Here, McTiernan claims that he was never made aware by his counsel at any time prior to his plea of the potential basis for a suppression motion. McTiernan claims that Special Agent Ornellas's phone call to McTiernan in February 2006, which led to the charged offense, was generated by the Recording. The basis for suppression of the Recording urged by McTiernan is codified in 18 U.S.C. § 2511(2)(d), which provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.*

18 U.S.C. § 2511(2)(d) (emphasis supplied); *see also* 18 U.S.C. § 2515 ("Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, reg-

14670     UNITED STATES v. MCTIERNAN

ulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."). McTiernan claims that if his previous counsel had informed him of the possibility of moving to suppress the Recording on the stated ground, he could have demonstrated at an evidentiary hearing that "Pellicano's intended purpose in secretly recording their phone call in 2000 was to use the recording for a criminal or tortious purpose, [and thus] the [R]ecording would be unlawful under 18 U.S.C. § 2511(2)(d)."

[4] McTiernan dedicates much of his argument to the merits of a motion predicated upon Sections 2511 and 2515. But McTiernan need not show that his motion will be successful on its merits. His burden is to show that proper advice "could have at least plausibly motivated a reasonable person in [McTiernan's] position not to have pled guilty had he known about the [grounds for suppression now advanced] prior to pleading." See United States v. Garcia, 401 F.3d 1008, 1011-12 (9th Cir. 2005). There is no indication that the district court applied this standard.

[5] Moreover, the district court erred in accepting Carlton's declaration as the basis for a finding that Carlton "advised McTiernan on the topic of possible suppression of the [R]ecording." Carlton declared only that he "did not see" any grounds "under the wiretap statute" for suppression of the Recording and that he "could not predict" any such basis would be discovered. Carlton did not assert that he reviewed the specific statutory grounds that might support suppression. Indeed, his notes and records do not reflect such a review as to *any* specific provision that might support suppression, let alone the specific provisions of Section 2511. Carlton referred only generally to "the wiretap statute." Although Carlton may have advised McTiernan generally that there was no basis for a suppression motion, his declaration lacks the clarity and pre-

UNITED STATES v. MCTIERNAN  14671

cision that would enable us to conclude that McTiernan was properly and adequately advised.

[6] The district court also erred in determining that McTiernan's failure to "suggest he has new evidence" and his mere "speculation concerning a criminal or tortious purpose for Pellicano's recording" bar a finding of a fair and just reason for withdrawal of the guilty plea. As previously noted, McTiernan is not required to produce evidence at this point. He is required to establish only that proper advice about the possibility of suppression under section 2511 could plausibly have motivated a reasonable person in his position not to have pled guilty. As long as a criminal or tortious purpose is a realistic possibility under the circumstances — which it assuredly is here — there is nothing inherently implausible about the proposition that a reasonable person would not have pled guilty and would instead have sought through discovery to establish an illicit motive for the taping. Nor does the district court's finding that McTiernan sought to withdraw his guilty plea only to avoid a custodial sentence bear upon the standard for determining a fair and just reason for withdrawal of the plea. The desire to avoid a custodial sentence may well be the motivation for the motion to withdraw the plea, but that motivation is not disqualifying if there is otherwise a fair and just reason to withdraw the plea.

[7] In accordance with the foregoing, we remand this case to enable the district court, after a full evidentiary hearing, to determine whether McTiernan can establish a fair and just reason to withdraw his plea. We note that on remand, McTiernan's "failure to proclaim his innocence should not count against him when he seeks to withdraw his plea under the 'fair and just reason' standard." *Garcia*, 401 F.3d at 1012. As to the factor of delay, we have opined that "[d]elay itself does not make an otherwise valid reason for withdrawal any less 'fair' or 'just,' " especially where there is nothing in the record to indicate that the "reasons for withdrawal were not bona fide, or that the government suffered great prejudice as

the result of [the] delay." *Id.* at 1013. Thus, we note that, although the motion to withdraw came approximately seventeen months after the plea, it was filed only two months after Neal was retained and McTiernan allegedly was first advised of a specific basis for suppression.

\* \* \*

The judgment of the district court is vacated, and the case is remanded for a full evidentiary hearing, to be followed by a decision consistent with the foregoing. In preparation for the evidentiary hearing, the parties may utilize such methods of discovery as may by law be available to them, subject to the supervision of the district court. We deny as moot McTiernan's "Motion for Judicial Notice of Certain Proceedings in Related Case."

**VACATED AND REMANDED.**